1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

11 | TERRANCE LAMONT MOORE,                )    1:11-cv-01446-LJO-JLT HC
                                         )
12 |              Petitioner,             )    FINDINGS AND RECOMMENDATIONS TO
                                         )    GRANT  RESPONDENT'S MOTION TO
13 |       v.                             )    DISMISS (Doc. 13)
                                         )
14 | H. A. RIOS,                          )    ORDER DIRECTING THAT OBJECTIONS
                                         )    BE FILED WITHIN TWENTY DAYS
15 |              Respondent.             )
    |_____)

16

17                          **PROCEDURAL HISTORY**

18        Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2241.

20        The instant petition for writ of habeas corpus was filed on August 29, 2011.  (Doc. 1).

21   Petitioner is in the custody of the Bureau of Prisons ("BOP").  He is serving a 1107-month sentence

22   at the United States Penitentiary, Atwater, California, for his 1999 conviction in the United States

23   District Court for the Eastern District of North Carolina of four counts of armed bank robbery in

24   violation of 18 U.S.C. §§ 2113(a) and (d), and four counts of use of a firearm during and in relation

25   to a crime of violation in violation of 18 U.S.C. § 924( c)(1).  (Doc. 13, Ex. 1).  The petition

26   challenges the BOP's policy of regularly withdrawing funds from Petitioner's prison account to

27   satisfy the sentencing court's restitution order pursuant to the Inmate Financial Responsibility

28   Program ("IFRP").  Petitioner alleges that the BOP's collection of restitution under the IFRP is

1

1  illegal where the sentencing court failed to either set forth a specific schedule of payment or set forth

2  a specific amount of restitution in its judgment.  (Doc. 1, p. 3).  Petitioner also contends that the

3  IFRP violates the Mandatory Victims Restitution Act ("MVRA") by infringing upon the sentencing

4  court's exclusive authority to schedule restitution repayments.  (Id., p. 9).

5         On September 8, 2011, the Court ordered Respondent to file a response to the petition.  (Doc.

6  11).  On November 7, 2011, Respondent filed the instant motion to dismiss, contending that the

7  petition should be dismissed because the claims are unexhausted and because, under Ninth Circuit

8  precedent, the IFRP has been found to be a lawful procedure for satisfying a sentencing court's

9  restitution order.  (Doc. 13). On December 9, 2011, Petitioner filed his opposition to the motion to

10  dismiss, contending that the issue is not whether the IFRP constitutes an unlawful delegation of

11  authority to the BOP but whether any program of repayment can be lawful where the sentencing

12  court fails to specify a repayment schedule or even a specific amount of restitution.  (Doc. 14, p. 11).

13                                              **DISCUSSION**

14         A.  Procedural Grounds for Motion to Dismiss

15         The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas

16  corpus other than those brought under § 2254 at the Court's discretion.  See, Rule 1 of the Rules

17  Governing Section 2254 Cases.  Rule 81(a)(2) provides that the rules are "applicable to proceedings

18  for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes

19  of the United States and has heretofore conformed to the practice of civil actions."  Fed. R. Civ. P

20  81(a)(2).  Indeed, the Court noted as much in the September 8, 2011 order requiring Respondent to

21  file a response.  (Doc. 11, p. 2, fn. 1).

22         The Federal Rules of Civil Procedure, on the other hand, "apply to proceedings for habeas

23  corpus ... to the extent that the practice in those proceedings (A) is not specified in a federal statute,

24  the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has

25  previously conformed to the practice in civil actions."  Fed.R.Civ.P. 81(a)(4).  Rule 12 also

26  provides "[t]he Federal Rules of Civil Procedure, *to the extent that they are not inconsistent with any*

27  *statutory provisions or these rules*, may be applied to a proceeding under these rules."  Rule 12,

28  Rules Governing Section 2254 Cases. (Emphasis supplied).

2

1    Rule 4 of the Rules Governing Section 2254 Cases provides that upon the court's

2    determination that summary dismissal is inappropriate, the "judge must order the respondent to file

3    an answer or *other pleading . . . or to take other action  the judge may order* ."  Rule 4, Rules

4    Governing Section 2254 Cases (emphasis added); see  also Advisory Committee Notes to Rule 4 and

5    5 of Rules Governing Section 2254 Cases (stating that a dismissal may obviate the need for filing an

6    answer on the substantive merits of the petition and that the Attorney General may file a Motion to

7    Dismiss for failure to exhaust.);  White v. Lewis , 874 F.2d 599, 60203 (9th Cir. 1989) (providing

8    that Motions to Dismiss pursuant to Rule 4 are proper in a federal habeas proceeding.)   Thus,  Rule

9    4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly

10   appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled

11   to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.[1]

12        The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if

13   the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

14   state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

15   4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874

16   F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

17   state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

18   Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court

19   should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

20        In its order to respond, the Court clearly anticipated responses in the form of motions to

21   dismiss that raise issues, such as the instant claims of failure to exhaust and failure to state a claim

22   for which relief can be granted, that would be subject to summary dismissal under Rule 4 of the

23   Rules Governing Section 2254 Cases.

24        B.  Jurisdiction

25        Respondent initially contends that the Court lacks subject matter jurisdiction over the petition

26   _____

27        [1] The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion.  See, Rule 1 of the Rules Governing Section 2254 Cases.  Civil Rule 81(a)(2) provides that the rules are "applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such

28   proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice of civil actions." Fed. R. Civ. P 81(a)(2).

3

1   because the petition seeks only exemption from the IFRP, not an earlier release.  (Doc. 13, p. 8).  The

2   Court disagrees.

3         Relief by way of a writ of habeas corpus extends to a person in custody under the authority of

4   the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the

5   validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28

6   U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's

7   execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g.,

8   Hernandez v. Campbell, 204 F.3d 861, 864-865 (9th Cir. 2000);  United States v. Giddings, 740 F.2d

9   770, 772 (9th Cir.1984); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief

10  under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed

11  in an illegal, but not necessarily unconstitutional, manor. See, e.g., Clark v. Floyd, 80 F.3d 371, 372,

12  374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal

13  custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment

14  center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner

15  could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of

16  inaccurate pre-sentence report used to deny parol).

17        By contrast, a federal habeas corpus petition is the correct, and only, method for a state

18  prisoner to challenge the "legality or duration" of his confinement.  Badea v. Cox, 931 F.2d 573, 574

19  (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Ramirez v. Galaza, 334

20  F.3d 850, 859 (9th Cir. 2003)("[H]abeas jurisdiction is absent...where a successful challenge to a

21  prison condition will not necessarily shorten the prisoner's sentence."); Advisory Committee Notes

22  to Rule 1 of the Rules Governing Section 2254 Cases.

23        Here, Petitioner asserts that the BOP is unlawfully withdrawing funds from his prison

24  account because the sentencing court failed to establish a repayment schedule or set a specific

25  amount of restitution.  Thus, Petitioner is challenging the execution of his sentence which, for a

26  federal prisoner, is maintainable only in a habeas corpus proceeding.  Tucker v. Carlson, 925 F.2d

27  330, 331 (9th Cir. 1990); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir. 1998)(*per

28  curiam*)(allowing a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

4

1    Indeed, this is the very conclusion the Court noted in its September 8, 2011 order to Respondent to

2    file a response.  (Doc. 11, p. 2).

3            C.   Failure to Exhaust.

4            Respondent next contends that the petition should be dismissed because Petitioner has failed

5    to administratively exhaust his claims.  As grounds therefore, Respondent concedes that Petitioner

6    exhausted his claims at the institutional and Regional levels, but that when his appeal to the Central

7    office was rejected because Petitioner had failed to provide a copy of his BP-9 or a receipt, or

8    because he did not provide a verified photocopy, and Petitioner did not thereafter resubmit his BP-11

9    in proper form within fifteen days of the date of the rejection notice, he failed to exhaust his claims

10   at the highest level.  (Doc. 13, p. 15).  Petitioner argues that he never received the rejection notice

11   from the Central office and that, in any event, he substantially complied with the exhaustion doctrine

12   by presenting his claim to the highest administrative body within the BOP.  (Doc. 14, p. 4).

13           Before filing a petition for writ of habeas corpus, a federal prisoner challenging any

14   circumstance of imprisonment must first exhaust all administrative remedies.  Martinez v. Roberts,

15   804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir.

16   1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners

17   exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not

18   a statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because

19   exhaustion is not required by statute, it is not jurisdictional." Id.  If Petitioner has not properly

20   exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and

21   reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in

22   court."

23           Here, without deciding whether Petitioner's rejected submission to the Central Office

24   satisfies the exhaustion requirement, the Court nevertheless finds that, in this instance, exhaustion

25   shall be excused, as it appears it would have been futile because the claims in all likelihood would

26   have been rejected.  Futility is an exception to the exhaustion requirement.  Laing v. Ashcroft, 370 F.

27   3d 994, 1000-01 (9th Cir. 2004), citing S.E.C. v. G.C. George Sec., Inc., 637 F.2d 585, 688, n. 4 (9th

28   Cir. 1981)("exceptions to the general rule requiring exhaustion cover situations such as where

1   administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would

2   be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.").

3   As such, the Court will reach the merits of Petitioner's claims.

4         D.  Merits of Petitioner's Claim.

5         Petitioner contends that the MVRA requires the sentencing court to set a restitution

6   repayment schedule, that this obligation is a duty that cannot be delegated either to the BOP and its

7   IFRP or some other entity, and that, in Petitioner's case, the sentencing court failed to meet this

8   requirement.  Thus, according to Petitioner's reasoning, the sentencing order is void *ab initio* and

9   cannot be used as a basis for delegating the collection of restitution to the IFRP.  (Doc. 14, p. 16).

10  For the reasons set forth below, the Court disagrees with Petitioner and concludes that the petition

11  should therefore be dismissed.

12        The MVRA requires that sentencing courts, prior to sentencing, obtain information regarding

13  the amount of restitution to be repaid and the names of the victims to whom the restitution should be

14  repaid.  18 U.S.C. § 3664(a)-(e).  Subdivision (f) of § 3664 then provides in pertinent part as follows:

15      (f)(1)(A) In each order of restitution, the court shall order restitution to each victim in the full
    amount of each victim's losses as determined by the court and without consideration of the economic
16  circumstances of the defendant.

17      (B) In no case shall the fact that a victim has received or is entitled to receive compensation
    with respect to a loss from insurance or any other source be considered in determining the
18      amount of restitution.

19      (2) Upon determination of the amount of restitution owed to each victim, the court shall,
    pursuant to section 3572, specify in the restitution order the manner in which, and the
20      schedule according to which, the restitution is to be paid, in consideration of–

21          (A) the financial resources and other assets of the defendant, including whether any of
            these assets are jointly controlled;
22

            (B) projected earnings and other income of the defendant; and
23

            (C)  any financial obligations of the defendant; including obligations to dependants.
24

25      (3)(A) A restitution order may direct the defendant to make a single, lump-sum payment,
    partial payments at specified intervals, in-kind payments, or a combination of payments at
    specified intervals and in-kind payments.
26

27      (B) A restitution order may direct the defendant to make nominal periodic payments if the
    court finds from facts on the record that the economic circumstances of the defendant do not
    allow the payment of any amount of a restitution order, and do not allow for the payment of
28      the full amount of a restitution order in the foreseeable future under any reasonable schedule
    of payments.

1   18 U.S.C. § 3664(f).

2        Section 3572 of Title 18, referenced in § 3664(f), sets forth the factors to be considered in

3   imposing fines and restitution in criminal cases.  Under a subsection entitled "Time, method of

4   payment, and related items," that statute provides as follows:

5        A person sentenced to pay a fine or other monetary penalty, including restitution, shall make
         such payment immediately, unless, in the interest of justice, the court provides for payment
6        on a date certain or in installments.  If the court provides for payment in installments, the
         installments shall be in equal monthly payments over the period provided by the court, unless
7        the court establishes another schedule.

8   18 U.S.C. § 3572(d)(1).

9        At sentencing, the court, as part of its sentencing order, ordered that Petitioner pay restitution

10  in the amount of $197,504.60.  (Doc. 13, Ex. 1, p. 7).  Under a section of the order entitled

11  "Restitution," the sentencing court identified four separate banking institutions as victims, as well as

12  the amount of restitution, i.e., the victims' respective shares of the restitution total, to be repaid to

13  each bank.  (Id.).  On the following page, under the section entitled "Schedule of Payments," the

14  court indicates that payment of the total amount of fines and "other criminal monetary penalties"

15  shall be due "in full immediately."  (Id., p. 8).

16       Petitioner contends that a sentencing court may not simply order immediate repayment of the

17  entire restitution amount and then delegate to the BOP, under the IFRP, the task of establishing a

18  repayment schedule.  (Doc. 14, p. 11).  For this proposition, Petitioner relies on United States v.

19  Gunning, 401 F.3d 1145, 1150 (9th Cir. 2005)("Gunning II").[2]

20       In Gunning II, the Ninth Circuit dealt with a sentencing order that, like here, specified that

21  restitution was "payable immediately."  However, in addition, the Gunning II court's order specified

22  that "during the time of the petitioner's imprisonment, it was to be paid through the BOP Inmate

23  Financial Responsibility Program (IFRP)."  401 F.3d at 1147.  The Ninth Circuit found that a

24  sentence imposed in this manner was an improper delegation to the BOP of the court's responsibility

25  to set the schedule for payment of restitution, as required by the MVRA.  The Ninth Circuit

26  _____

27  [2]Gunning II came to the Ninth Circuit after that court had previously remanded the case to the district court in United
    States v. Gunning, 339 F.3d 948 (9th Cir. 2003) ("Gunning I").  In Gunning I, the Ninth Circuit found, inter alia, that the
    district court had erred by delegating the responsibility for setting a schedule for restitution payments to the probation office.
28  Id. at 949-950.  After the district court conducted an evidentiary hearing, it affirmed its original sentencing order and the case
    was appealed to the Ninth Circuit as Gunning II.

                                                            7

1    specifically noted that the MVRA charges the trial court with fixing the terms of restitution, and that

2    this responsibility is non-delegable.  Id. at 1149.

3         Subsequently, the Ninth Circuit, in United States v. Lemoine, 546 F.3d 1042, 1046, 1049 (9th

4    Cir. 2008), considered a case where the petitioner filed a habeas petition pursuant to § 2241 which,

5    among other things, challenged the BOP's authority to schedule inmate restitution payments through

6    the imposition of the IFRP and claimed that his participation in that program was involuntary.  Id. at

7    1044-1046.  The Ninth Circuit held that the "BOP's operation of the IFRP does not constitute an

8    unlawful delegation of authority to schedule restitution payments in violation of the MVRA," and

9    that the petitioner's participation in the IFRP is voluntary even though "he would have been denied

10   certain privileges if he had refused to join the program."  Id. at 1046.

11        The tension between Gunning II and Lemoine is obvious: Gunning II holds that the district

12   court has the sole discretion to set a restitution schedule, yet Lemoine confirms that the BOP can

13   "suggest" a more aggressive restitution schedule and back up its suggestions with the threat of

14   reduced privileges if that schedule is not followed.

15        This identical issue has arisen before in this Court.  In Ha v. Adler, 2009 WL 464467 (E.D.

16   Cal. Feb. 24, 2009), the Court considered a situation factually indistinguishable from the instant

17   case: i.e., a restitution order specifying that "restitution shall be paid in full immediately, but partial

18   payments shall be paid proportionally to each victim."  Id. at *1.  The Court rejected the petitioner's

19   contention that the restitution order failed to properly specify a payment schedule and improperly

20   delegated such duties to the BOP as follows:

21        Unlike the restitution order in Gunning [II], Petitioner's restitution order does not require
          Petitioner to participate in the IFRP.  To the contrary, Petitioner concedes that he signed an
22        Inmate Financial Contract pursuant to which he agreed to participate in the IFRP.  "While the
          MVRA forbids the wholesale delegation of the scheduling responsibility to the BOP, nothing
23        in the text of the statute...places any limits on the BOP's operation of an independent
          program, such as the IFRP, that encourages inmates voluntarily to make more generous
24        restitution payments than mandated in their respective judgments."  Lemoine, 546 F.3d at
          1048.  Accordingly, Petitioner's restitution order does not violate the rule set forth in
25        Gunning [II], as the trial court did not delegate the scheduling of Petitioner's payments to the
          BOP.

26

27   Ha, 2009 WL 464667 at *3.

28        Having rejected the argument that the restitution order violated the MVRA by delegating the

8

1  duty to establish a restitution schedule to the BOP, the Court then dealt with the issue raised squarely

2  in this case, i.e., whether the restitution order itself was invalid because it failed to set forth a

3  restitution schedule of its own.  The Court assuming, without deciding, that the order was deficient

4  in this regard, then concluded that the error was harmless:

5        To the extent Petitioner contends that a court-ordered restitution schedule would have
         required him to pay less per month than his current payment schedule under the IFRP, the
6        trial court's failure to set a restitution schedule was rendered harmless when Petitioner
         voluntarily agreed to participate in the IFRP.  See Lemoire, 546 F.3d at 1048 (MVRA does
7        not prohibit prisoner from voluntarily agreeing to pay more than required by the court-
         ordered restitution schedule).  To the extent the trial court would have required Petitioner to
8        pay more per month than he is currently required to pay under the IFRP, Petitioner cannot
         argue that he has been harmed by the trial court's error.  Accordingly, the trial court's failure
9        to set a detailed restitution schedule was, at worst, harmless error, and Petitioner is not
         entitled to relief under section 2241.

10

11  2009 WL 464667 at *4.  The Court reached a similar conclusion in Mattos v. Smith, 2009 WL

12  415603 (E.D. Cal. Feb. 18, 2009).  There, the restitution order provided that "payment of criminal

13  monetary penalties is due during imprisonment."  The order further provided that "all criminal

14  monetary penalties, except those payments made through the Federal Bureau of Prison's Inmate

15  Financial Responsibility Program, are made to the clerk of the court."  As in Ha, the petitioner in

16  Mattos at first agreed to participate in the IFRA, but then later challenged the sentencing court's

17  restitution order as deficient because it failed to set forth a precise payment schedule that amounted

18  to an improper delegation of the court's scheduling duty to the BOP.  Id. at *1.  As in Ha, the Court

19  rejected the wrongful delegation argument and found that any error in failing to set forth a detailed

20  payment schedule in the sentencing order was harmless.  Id. at *2-3.

21        In his opposition to the motion to dismiss, Petitioner attempts to distinguish Ha, and,

22  presumably Mattos, because, Petitioner argues, in this case, the sentencing "order explicitly required

23  him to pay restitution through the Inmate Financial Responsibility Program."  (Doc. 14, p. 13).  In

24  support of this contention, Petitioner indicates that his sentencing order provided as follows:

25        Payment of...criminal monetary penalties shall be due "in full immediately..."
         All criminal monetary penalty payments are to be made...'through the Bureau of Prisons'
26        Inmate Financial Responsibility Act.'"

27  (Id.).

28        Petitioner's excerpt of the sentencing order, however, leaves out critical language which,

9

1  when read in full, makes his case indistinguishable from <u>Ha</u> and <u>Mattos</u>.  The <u>full</u> paragraph quoted

2  by Petitioner reads as follows:

> Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments are to be made to the United States District Court, Eastern District of North Carolina, Post Office Box 198559, Atlanta, Georgia 30384, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program."

7  (Doc. 13, Ex. 1, p. 8).  In other words, when the paragraph is read in its entirety, it is obvious that the

8  sentencing order did not, as Petitioner maintains, "explicitly require[ ] him to pay restitution through

9  the Inmate Financial Responsibility Program."  Rather, the paragraph clearly envisions payments

10  directly to the sentencing court as the primary method of restitution repayment, while permitting

11  Petitioner to be credited for any additional payments made through the IFRP.  Under such

12  circumstances, Petitioner cannot factually distinguish his case from <u>Ha</u> and <u>Mattos</u>.

13      For the reasons set forth in <u>Ha</u> and <u>Mattos</u>, the Court concludes that no improper delegation

14  to the BOP of the sentencing court's duty to create a repayment schedule occurred.  The sentencing

15  order did not require Petitioner to enroll in the IFRP nor did it require that restitution be paid only

16  through that program.  Instead, it simply left open the possibility that Petitioner could enroll in the

17  program, make regular payments, and enjoy the additional privileges afforded by the IFRP.  Nothing

18  in that scenario violates the MVRA.

19      As for Petitioner's allegation that the sentencing order itself was defective for failing to set

20  forth a schedule of payments, assuming, without deciding, that such a sentencing order was deficient,

21  the Court finds that any error was harmless.  Petitioner is only entitled to habeas relief if the

22  sentencing error in his case was not harmless.  <u>E.g.</u>, <u>Butler v. Curry</u>, 528 F.3d 624, 647 (9th Cir.

23  2008).  Respondent has established that Petitioner joined and then dropped out of the IRFA program

24  on at least ten separate occasions, the first enrollment occurring on July 27, 1999, just days after his

25  conviction, and the first actual participating in the IFRP occurring on September 4, 1999. (Doc. 13,

26  Ex. 2, p. 3).  Respondent's evidence also indicates that, as of October 18, 2011, when the documents

27  supporting the motion to dismiss were prepared, Petitioner was still participating in the IFRP.  (Doc.

28  13, Ex.5).  Petitioner's periods of withdrawal from the program varied, some lasting as little as four

1  days or as long as 27 months, while his periods of active participation in the program lasted as long

2  as a year or as little as two months.  (Id.).

3        Nevertheless, by repeatedly joining the program, and making at least some restitution

4  payments pursuant to the IFRA schedule before dropping out, Petitioner has rendered harmless any

5  payment schedule the sentencing court might have lawfully fashioned that would have required

6  lower monthly payments than those Petitioner paid to the IRFA.  Likewise, if the sentencing court

7  had fashioned a repayment schedule with higher payments than those Petitioner made to the IFRA,

8  Petitioner can hardly claim now that he has suffered any harm.  Thus, any sentencing error in failing

9  to establish a repayment schedule was harmless.  Butler, 528 F.3d at 647.

10        Accordingly, even if the Court were to assume the truth of Petitioner's factual allegations,

11  Petitioner has failed to allege facts sufficient to entitle him to habeas relief under § 2241.

12  Accordingly, the motion to dismiss should be granted and the petition should be dismissed for failure

13  to state a cognizable habeas claim.

14                              **RECOMMENDATIONS**

15        For the foregoing reasons, the Court HEREBY RECOMMENDS that Respondent's motion

16  to dismiss the petition (Doc. 13) should be GRANTED.

17        This Findings and Recommendation is submitted to the United States District Court Judge

18  assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

19  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

20  twenty (20) days after being served with a copy of this Report and Recommendation, any party may

21  file written objections with the Court and serve a copy on all parties.  Such a document should be

22  captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

23  Objections shall be served and filed within fourteen days (plus three days if served by mail) after

24  service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28

25  U.S.C. § 636 (b)(1)(C).

26  ///

27  ///

28  ///

11

1        The parties are advised that failure to file objections within the specified time may waive the

2   right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3

4   <u>IT IS SO ORDERED.</u>

5   <u>Dated:   **January 11, 2012** </u>                                                 **/s/ Jennifer L. Thurston**

6                                                              UNITED STATES MAGISTRATE JUDGE